**Oral Argument Not Yet Scheduled**
**No. 18-7154**

IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

◆◆◆

PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED,

*Petitioner-Appellee,*

—v.—

FEDERAL REPUBLIC OF NIGERIA and MINISTRY OF PETROLEUM RESOURCES
OF THE FEDERAL REPUBLIC OF NIGERIA,

*Respondents-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 18-cv-0594 (HON. CHRISTOPHER R. COOPER)

## OPENING BRIEF FOR RESPONDENTS-APPELLANTS

CURTIS, MALLET-PREVOST, COLT
& MOSLE LLP

KEVIN A. MEEHAN                     JOSEPH D. PIZZURRO
JUAN O. PERLA                       1717 Pennsylvania Avenue, NW
101 Park Avenue                     Washington, DC 20006
New York, NY 10178                  (202) 452-7373
(212) 696-6000                      jpizzurro@curtis.com

*Attorneys for Respondents-Appellants Federal Republic of Nigeria and Ministry
of Petroleum Resources of the Federal Republic of Nigeria*

April 1, 2019

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Respondents-Appellants Federal Republic of Nigeria and Ministry of Petroleum Resources of the Federal Republic of Nigeria (collectively, "Nigeria"), through counsel, state that:

### A.     Parties and Amici

The parties who appeared before the United States District Court for the District of Columbia, the Honorable Christopher R. Cooper ("District Court"), and who are before this Court are:

- Federal Republic of Nigeria (Respondent-Appellant);

- Ministry of Petroleum Resources of the Federal Republic of Nigeria (Respondent-Appellant); and

- Process and Industrial Developments Limited (Petitioner-Appellee or "P&ID").

There were no amici or intervenors in the District Court and none are before this Court now.

### B.     Rulings under Review

This appeal involves review of the District Court's October 1, 2018 Opinion and Order in *Process and Industrial Developments Limited v. Federal Republic of Nigeria*, No. 18-cv-0594 (District Court Docket Entry No. 34, JA-226-30), which granted Appellee P&ID's motion for an order requiring Nigeria to defend against a

i

petition to confirm an arbitral award on the merits under the Federal Arbitration

Act ("FAA"), 9 U.S.C. § 201 *et seq.*, before Nigeria's motion to dismiss on

sovereign immunity grounds has been conclusively decided under the Foreign

Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.* No official

citation to the ruling currently exists.

### C.    Related Cases

This case has not previously been before this Court or any other court other

than the District Court.

  */s/ Joseph D. Pizzurro*
Joseph D. Pizzurro
(D.C. Bar No. 468922)

*Counsel for Respondents-Appellants*
*Federal Republic of Nigeria and*
*Ministry of Petroleum Resources of*
*the Federal Republic of Nigeria*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

    A.    Parties and Amici ...................................................................i

    B.    Rulings under Review ...........................................................i

    C.    Related Cases ...................................................................... ii

TABLE OF AUTHORITIES ....................................................................v

GLOSSARY...........................................................................................ix

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 4

STATEMENT OF ISSUE....................................................................... 5

PERTINENT STATUTES ..................................................................... 5

STATEMENT OF THE CASE................................................................ 5

    A.    Factual Background................................................................ 6

    B.    Proceedings Below ................................................................ 8

STANDARD OF REVIEW .................................................................. 13

SUMMARY OF ARGUMENT ........................................................... 13

ARGUMENT ..................................................................................... 16

I.    REQUIRING NIGERIA TO DEFEND THIS SUIT ON THE MERITS BEFORE ITS SOVEREIGN IMMUNITY HAS BEEN DEFINITIVELY RESOLVED IS AN ABROGATION OF THAT IMMUNITY ....................................................................................16

II.    THE INFRINGEMENT ON NIGERIA'S IMMUNITY IS SUFFICIENT TO CONFER JURISDICTION ON THIS COURT UNDER THE COLLATERAL ORDER DOCTRINE ................................28

CONCLUSION ..................................................................................31

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

**Cases**[*]

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) ................................................................27

*Balkan Energy Ltd. v. Republic of Ghana*,
  302 F. Supp. 3d 144 (D.D.C. 2018) ......................................26

*Barot v. Embassy of Zambia*,
  785 F.3d 26 (D.C. Cir. 2015) .................................................9

*Belize Soc. Dev., Ltd. v. Government of Belize*,
  668 F.3d 724 (D.C. Cir. 2012) ..............................................10

* *Blue Ridge Invs., L.L.C. v. Republic of Argentina*,
  735 F.3d 72 (2d Cir. 2013) ............................... 4, 14, 21, 25

* *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  137 S. Ct. 1312 (2017) ................... 2, 3, 16, 17, 22, 23, 24, 31

* *Butler v. Sukhoi Co.*,
  579 F.3d 1307 (11th Cir. 2009) .............. 5, 14, 17, 18, 19, 24, 29

*Butler v. Sukhoi Co.*,
  No. 07-61078, 2008 U.S. Dist. LEXIS 130770 (S.D. Fla. July 29, 2008) ..........18

*Chevron Corp. v. Republic of Ecuador*,
  795 F.3d 200 (D.C. Cir. 2015) .......................................... 10, 24

*Creighton v. Qatar*,
  181 F.3d 118 (D.C. Cir. 1999) ..............................................11

*De Csepel v. Republic of Hungary*,
  714 F.3d 591 (D.C. Cir. 2013) ..............................................30

*De Csepel v. Republic of Hungary*,
  859 F.3d 1094 (D.C. Cir. 2017) ....................................... 13, 30

---

[*] Authorities upon which we chiefly rely are marked with askterisks.

*EM Ltd. v. Banco Central de la República Argentina*,
  800 F.3d 78 (2d Cir. 2015) ........................................................... 24, 28

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
  12 F.3d 1270 (3d Cir. 1993) ................................................................28

*Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*,
  665 F.3d 384 (2d Cir. 2011) ...............................................................21

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
  905 F.2d 438 (D.C. Cir. 1990) ................................................. 13, 17, 18

*Frey v. Socialist People's Libyan Arab Jamahiriya*,
  No. 97-0975-RCL, 2004 U.S. Dist. LEXIS 33027 (D.D.C. Apr. 6, 2004) ..........19

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
  784 F.3d 804 (D.C. Cir. 2015) ..............................................................30

*In re Papandreou*,
  139 F.3d 247 (D.C. Cir. 1998) ..............................................................24

*In re Republic of the Philippines*,
  309 F.3d 1143 (9th Cir. 2002) ....................................................... 17, 18

*In re Socialist People's Libyan Arab Jamahiriya*,
  No. 04-7038, 2004 U.S. App. LEXIS 7244 (D.C. Cir. Apr. 13, 2004) ...............19

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
  213 F.3d 841 (5th Cir. 2000) ...............................................................19

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*,
  376 F.3d 1123 (D.C. Cir. 2004) .........................................................4, 28

*Micula v. Gov't of Romania*,
  714 F. App'x 18 (2d Cir. 2017) ............................................................27

* *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017) ..................................................................27

*Philippines v. Pimentel*,
  553 U.S. 851 (2008) ................................................................. 16, 23, 25

vi

\* *Phoenix Consulting, Inc. v. Republic of Angola*,
   216 F.3d 36 (D.C. Cir. 2000) .................................................. 16, 17, 24

*Price v. Socialist People's Libyan Arab Jamahiriya*,
   389 F.3d 192 (D.C. Cir. 2004) ...................................................17

*Qi-Zhou v. Meissner*,
   70 F.3d 136 (D.C. Cir. 1995) ...................................................11

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
   162 F.3d 748 (2d Cir. 1998) .................................................. 18, 28

*Segni v. Commercial Office of Spain*,
   816 F.2d 344 (7th Cir. 1987) .................................................. 17, 18

*Tatneft v. Ukraine*,
   No. 17-cv-582 (CKK), 2018 U.S. Dist. LEXIS 152356
   (D.D.C. May 2, 2018) .................................................. 21, 26

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
   487 F.3d 928 (D.C. Cir. 2007) .................................................. 10, 26

\* *United States v. Moats*,
   961 F.2d 1198 (5th Cir. 1992) ........................................ 17, 20, 21, 29

*Verlinden B.V. v. Central Bank of Nigeria*,
   461 U.S. 480 (1983) .................................................. 2, 16, 27

## Statutes

9 U.S.C. § 6 ...................................................................26

28 U.S.C. § 1605(a)(1) ...........................................................11

28 U.S.C. § 1605(a)(6)(B) .......................................................9, 11

28 U.S.C. § 1608(a)(3) ...........................................................9

28 U.S.C. § 1608(d) ...............................................................9

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................... 2, 5, 11, 14, 18

Fed. R. Civ. P. 12(b)(2) ................................................................5

**Other Sources**

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
   No. 15-423, 2016 U.S. S. Ct. Briefs LEXIS 3114
   (U.S. Aug. 26, 2016) ...............................................................23

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
   June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ............................... 9, 10, 22, 24

*The Minister of Petroleum Resources v. Process and Industrial Developments
   Limited BVI*
   [2016] No. FHC/L/CS/264/2016 (Nigeria) ...........................................7

# GLOSSARY

**District Court** ................................... United States District Court for the District of Columbia

**FAA** .................................................. Federal Arbitration Act

**FSIA** ................................................ Foreign Sovereign Immunities Act

**GSPA** .............................................. Gas Supply and Processing Agreement

**New York Convention** ................... Convention on the Recognition and Enforcement of Foreign Arbitral Awards

**Nigeria** ............................................ Federal Republic of Nigeria and Ministry of Petroleum Resources of the Federal Republic of Nigeria

**Order** .............................................. October 1, 2018 Opinion and Order

**P&ID** .............................................. Process and Industrial Developments Limited

## INTRODUCTION

This appeal raises only one question: whether an order requiring Nigeria to present its merits defenses to the confirmation of a foreign arbitral award before there has been a conclusive determination of its assertion of sovereign immunity is itself an abrogation of that immunity. If so, then (i) this Court has jurisdiction to review that order under the collateral order doctrine and (ii) the District Court's decision must be overturned.

Nigeria has an absolute right to have its sovereign immunity conclusively and authoritatively determined as a threshold matter under the FSIA before it may be required to defend this lawsuit on the merits. As the D.C. Circuit and other courts of appeals have consistently held, sovereign immunity is not only immunity from liability and the burdens of litigation, but also a gesture of grace and comity to protect foreign sovereigns from the affront to their independence and dignity caused by having to defend against the merits of a claim over which a court lacks jurisdiction. And any infringement of that immunity is immediately appealable under the collateral order doctrine, because an abrogation of immunity is effectively unreviewable after a final decision has been entered.

In this case, P&ID filed a petition to confirm a foreign arbitral award, and Nigeria responded with a motion to dismiss for lack of jurisdiction on sovereign immunity grounds under the FSIA. Instead of resolving Nigeria's motion first, the

1

District Court entered the October 1, 2018 Opinion and Order ("Order"), on

P&ID's motion, directing Nigeria to prepare and present its merits defenses before

the court would make the required threshold jurisdictional immunity

determination. That is the Order appealed from. The fact that this action involves

a petition to confirm an arbitral award, as opposed to an ordinary civil complaint,

is of no moment. The situation is no different from an order declining to resolve a

Rule 12(b)(1) motion to dismiss based on sovereign immunity until after the

sovereign has filed an answer – a directive that has been found to be an

immediately appealable denial of sovereign immunity because it irreversibly and

irreparably subjects the foreign state to the burdens and indignities that sovereign

immunity is intended to avoid. Likewise here, the Order appealed from

impermissibly infringes on Nigeria's sovereign immunity because it requires

Nigeria to respond to the petition on the merits before its assertion of immunity has

been addressed.

  Indeed, from the Supreme Court's first decision applying the FSIA in

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983), through its recent

decision in *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling

Co.*, 137 S. Ct. 1312 (2017), FSIA case law has established that foreign states are

entitled to a conclusive and authoritative jurisdictional immunity determination as

near to the outset of the litigation as possible before a district court may proceed to

the merits phase.  Otherwise, the "basic objective" of foreign sovereign immunity, *i.e.*, "to free a foreign sovereign from *suit*," would be defeated.  *Helmerich & Payne,* 137 S. Ct. at 1317.  That is the right Nigeria seeks to vindicate here.

Against this long line of cases, the District Court concluded that an order directing a foreign state to present its jurisdictional immunity and merits defenses simultaneously in opposition to a petition to confirm an arbitral award did not infringe on any of the interests protected by the FSIA and, in any event, was less burdensome than allowing separate jurisdictional and merits phases with separate appeals.  The District Court cited no authority for that conclusion – because there is none.  Instead, it accepted P&ID's theory that the FAA's "summary procedure" may be used to require a foreign state to forego its right to a threshold immunity determination, even though that position flies in the face of the Supreme Court's admonition in *Helmerich & Payne* and finds no support in any of the case law.  In effect, the District Court created a new rule that a foreign state can be required to present merits defenses before its sovereign immunity is conclusively determined if the proceeding is one to confirm a foreign arbitral award.

However, the FAA contains no provision compelling a foreign state to present its immunity and merits defenses at the same time or authorizing a court to postpone its determination of sovereign immunity until the merits are addressed.  And there is no decisional authority to that effect.  If the FAA were construed to

require that outcome, it would create tension with the FSIA's basic objective of

protecting a foreign sovereign from the affront and other burdens of being

impermissibly subjected to the jurisdiction of a United States court – in which case

that tension would have to be resolved in favor of sovereign immunity.  Courts

have consistently upheld the primacy of the FSIA, which applies to foreign state

defendants specifically, over other statutes that do not distinguish between

sovereign and private parties, including in actions to enforce arbitral awards.  Thus,

whatever residual application the FAA's procedure may have in this case must

bend to the exigencies of the FSIA.

## JURISDICTIONAL STATEMENT

P&ID filed a petition to confirm a foreign arbitral award against Nigeria.

Nigeria moved to dismiss the petition for lack of subject matter jurisdiction under

the FSIA, reserving its merits defenses until the sovereign immunity issue had been

conclusively decided.  On October 1, 2018, the District Court issued the Order

requiring Nigeria to oppose the petition on the merits before its assertion of

sovereign immunity had been resolved.  Nigeria timely appealed on October 5,

2018.  This Court has jurisdiction under the collateral order doctrine because any

refusal to dismiss a case on sovereign immunity grounds is subject to immediate,

interlocutory review.  *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376

F.3d 1123, 1126 (D.C. Cir. 2004); *see Blue Ridge Invs., L.L.C. v. Republic of*

4

*Argentina*, 735 F.3d 72, 80-81 (2d Cir. 2013); *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1311 (11th Cir. 2009).

## STATEMENT OF ISSUE

Whether a foreign state is entitled to a threshold sovereign immunity determination in an action to confirm a foreign arbitral award under the FSIA before being required to present all of its merits defenses under the FAA.

## PERTINENT STATUTES

The relevant statutory provisions are reproduced in the Addendum to this Brief.

## STATEMENT OF THE CASE

This appeal arises from P&ID's efforts to confirm a foreign arbitral award that has been lawfully set aside by a competent authority and therefore, under the controlling law in this Circuit, does not exist to be enforced in the United States. On that basis, Nigeria moved to dismiss P&ID's petition to confirm the award for lack of jurisdiction under the FSIA pursuant to Fed. R. Civ. P. 12(b)(1) and (2), and asserted its right to be free from the obligation of having to defend this suit on the merits before its sovereign immunity had been conclusively determined. D.E. 28-1 at 12-13, 30-32.[1] The District Court denied Nigeria's right to a threshold sovereign immunity determination, and this appeal followed.

---

[1] References to "D.E." are to the District Court's docket entries.

## A.     Factual Background

The underlying arbitration arose from a dispute between Nigeria and P&ID over Nigeria's supposed breach of a gas supply and processing agreement ("GSPA") involving, on the one side, P&ID's commitment to build a gas processing facility in the Niger Delta and, on the other, Nigeria's obligation to supply that facility with "wet gas" from third parties in exchange for "lean gas" that could be used to power electric plants.  JA-38-39 (GSPA § 3).[2]  The law governing the agreement was Nigerian law.  JA-46 (GSPA § 20).  When third parties refused to supply the wet gas, the project broke down.  JA-82-83 (Liability Award ¶ 38).  P&ID never put a shovel in the ground to build the facility.

P&ID commenced arbitration against Nigeria pursuant to their agreement to arbitrate "under the rules of the Nigerian Conciliation and Arbitration Act."  JA-54 (Notice of Arbitration at 2); *see* JA-46 (GSPA § 20).  The agreement designated London as the "venue" for the arbitration.  JA-47 (GSPA § 20).  The arbitral tribunal rendered an initial decision on liability, finding that Nigeria had breached the GSPA.  JA-87, 93 (Liability Award ¶¶ 54, 80.)  It reasoned that Nigeria had an obligation to obtain and deliver wet gas to P&ID's facility despite the fact that P&ID had never commenced construction of the facility and thus there was no "plant to receive it."  JA-89 (Liability Award ¶¶ 63-66).

---

[2] References to "JA-" are to the Joint Appendix filed herewith.

Following the tribunal's decision on liability, and before proceeding to the damages (or quantum) phase, Nigeria sought to have the liability award set aside. Nigeria first applied to a court in London. JA-14 (Pet. ¶ 22); *see* D.E. 28-1 at 7-8. Nigeria explained that, "given the differing headings on the various procedural orders" and the liability award itself, there was some confusion as to the seat of the arbitration and the supervisory jurisdiction of the English courts. JA-122-23 (London Court Application ¶ 33). The English court did not address that issue and denied the application as untimely. JA-132 (¶ 2).

Nigeria then applied for an order setting aside the liability award in the Federal High Court in Lagos, Nigeria. JA-14 (Pet. ¶ 24); *see* JA-134-36 (Nigerian Court Application at 2-4). Nigeria also moved for an order enjoining the parties from continuing the arbitral proceedings pending resolution of the set-aside motion. JA-14 (Pet. ¶ 24). P&ID chose not to contest or participate in the Nigerian proceedings. JA-15 (Pet. ¶ 25); JA-26 (Andrew Decl. ¶ 21). The Presiding Judge of the Federal High Court granted the injunction. JA-172-74. Nigeria informed the tribunal of the court's order the following day. JA-176. Shortly thereafter, the Nigerian court issued an order setting aside the liability award, *The Minister of Petroleum Resources v. Process and Industrial Developments Limited BVI* [2016] No. FHC/L/CS/264/2016. JA-162-64. P&ID

7

never appealed or challenged that decision, and the Nigerian court's judgment setting aside the liability award is now final and binding.

Notwithstanding the Nigerian court's order setting aside the liability award, the tribunal proceeded to the quantum phase. Although Nigeria agreed to participate in the continued arbitral proceedings, it made clear its position that the liability award had been set aside in Nigeria. JA-15 (Pet. ¶ 26); JA-166, 168. Eventually, the tribunal rendered a decision on damages in which a majority of the arbitrators applied English law, rather than Nigerian law (the governing law of the contract), to award more than $6.6 billion in damages based on a discounted cash flow using an irrationally low discount rate for the twenty-year term of the agreement plus seven percent pre- and post-award interest for a project that had no history of profits, ignoring P&ID's obligation under Nigerian law to mitigate damages. JA-210-12 (Damages Award ¶¶ 106-110); *see* D.E. 28-1 at 10-12. P&ID claims it is now owed around $9 billion in compensation for Nigeria's supposed breach of contract, JA-16 (Pet. ¶¶ 27-28), an irrational and unconscionable amount that can only be understood as punitive. That is the award P&ID is trying to enforce in the proceedings below.

### B.    Proceedings Below

P&ID commenced this action on March 16, 2018. After P&ID obtained a clerk's entry of default based on defective service of process, Nigeria appeared

through counsel to have the default set aside and the action dismissed for lack of personal jurisdiction, insufficient process, and insufficient service of process.[3] Nigeria had no obligation to appear at all since it had not been properly served, and the District Court granted Nigeria's motion to set aside the clerk's entry of default "because Petitioner did not properly effectuate service of process," but denied dismissal of the action.  JA-4 (July 13, 2018 Minute Order).

Understanding the consequences of its first faulty service attempt, P&ID attempted service on Nigeria a second time.  D.E. 25.  Within sixty days from the second service attempt as provided in the FSIA, 28 U.S.C. § 1608(d), Nigeria filed a timely motion to dismiss for lack of jurisdiction on sovereign immunity grounds under the FSIA.  JA-224-25.

Nigeria argued that, under the controlling law of the D.C. Circuit, the only exception to immunity that could possibly apply is the arbitration exception, 28 U.S.C. § 1605(a)(6)(B), which confers jurisdiction over actions to confirm foreign arbitral awards that are governed by an applicable treaty such as the one that applies in this case: the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38  ("New York Convention").  However, the arbitration exception contains two additional

---

[3] In attempting to serve Nigeria, P&ID failed to comply with the statutory requirement that service be addressed and dispatched to "the head of the ministry of foreign affairs of the foreign state," 28 U.S.C. § 1608(a)(3), as strictly applied by this Court in *Barot v. Embassy of Zambia*, 785 F.3d 26 (D.C. Cir. 2015).

9

substantive requirements: the existence of a valid arbitration agreement *and* the existence of an enforceable award. As this Court has held, "[i]f there is no arbitration agreement or no award to enforce," a foreign state is entitled to sovereign immunity and the court must dismiss the case for lack of jurisdiction under the FSIA. *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015); *see* D.E. 28-1 at 14-15. And, in this case, under D.C. Circuit precedent, P&ID's award "does not exist to be enforced" because it has been lawfully set aside by a Nigerian court, "a competent authority * * * under the law of which, that award was made" in accordance with Article V(1)(e) of the New York Convention.[4] *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935-36 (D.C. Cir. 2007); *see* D.E. 28-1 at 7-10, 15-16.

Nigeria explained that the judgment of the Nigerian court was final and binding, and thus the District Court was "obliged to respect it" unless it determined that the judgment offended "fundamental notions of what is decent and just." *TermoRio*, 487 F.3d at 930, 938; *see* D.E. 28-1 at 17. Nothing in the record warrants refusing to recognize the Nigerian court's judgment. D.E. 28-1 at 17. Finally, Nigeria asserted its right to be free from the burdens of having to defend

---

[4] The phrase "under the law of which" refers to the procedural law under which the parties agreed to arbitrate. *Belize Soc. Dev., Ltd. v. Government of Belize*, 668 F.3d 724, 731 (D.C. Cir. 2012); *see* D.E. 28-1 at 15-16. Here, the parties agreed to arbitrate "under the rules of the Nigerian Conciliation and Arbitration Act." JA-46 (GSPA § 20); *see* D.E. 28-1 at 16.

this suit on the merits before its sovereign immunity had been conclusively

determined, including by appeal if necessary.[5]  D.E. 28-1 at 30-32.

Instead of responding to Nigeria's Rule 12(b)(1) motion in the ordinary

course, P&ID moved for an order directing Nigeria to present its merits defenses

before its immunity from suit had been determined, so that the District Court could

decide Nigeria's immunity defense and liability on the award in a single decision.[6]

D.E. 31 at 2.  Nigeria opposed P&ID's motion, reasserting its absolute right to

have its sovereign immunity determined as a threshold issue, and explaining that

an order directing it to defend this action on the merits before its immunity from

_____

[5] P&ID also invoked the waiver exception to sovereign immunity, which applies
where the foreign state has waived immunity from suit in the "courts of the United
States" either "explicitly or by implication."  28 U.S.C. § 1605(a)(1).  However, as
Nigeria argued, under the law of this Circuit, that exception cannot apply here – for
good reason.  Absent an express waiver of immunity, which does not exist here, an
agreement to arbitrate *outside* the United States is insufficient to infer a waiver of
immunity from suit in the United States even if the resulting award is enforceable
under an applicable treaty such as the New York Convention.  That is why
Congress enacted the arbitration exception.  *Creighton v. Qatar*, 181 F.3d 118, 126
(D.C. Cir. 1999); *see* D.E. 28-1 at 23-30.  If the generic waiver exception were
interpreted to confer jurisdiction in award confirmation proceedings, then the more
specific arbitration exception, section 1605(a)(6)(B), would become superfluous,
an untenable result under mandatory rules of statutory construction.  *See Qi-Zhou
v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995) (stating that "two distinct
subsections" of the same statute must be interpreted "in a manner that gives
meaning to both"); *see also* D.E. 28-1 at 29-30.

[6] The apparent goal of P&ID's motion was to obtain a final judgment on the award
that it could then attempt to enforce while any appeal from a denial of
jurisdictional immunity might be pending.  *See* D.E. 31 at 4.

suit had been definitively resolved would constitute an impermissible infringement on its sovereign immunity.  D.E. 32 at 4-5.

On October 1, 2018, the District Court granted P&ID's motion and entered the Order directing Nigeria to present all jurisdictional and merits arguments in a single opposition.  JA-230.  Four days later, Nigeria filed a notice of appeal advising the District Court that the timely filing of a notice of appeal from a denial of sovereign immunity divests a district court of jurisdiction pending that appeal. JA-232.  In light of Nigeria's notice of appeal, the District Court automatically stayed proceedings until further notice.  JA-5 (October 9, 2018 Minute Order).

Shortly thereafter, P&ID moved the District Court to certify the appeal as frivolous or invalid and to lift the stay.  D.E. 37.  The District Court denied P&ID's motion, holding that Nigeria's appeal was sufficiently meritorious to divest the court of jurisdiction on the "theory that the Order is immediately reviewable because it had the *effect* of abrogating sovereign immunity."  JA-236.

P&ID then moved this Court to dismiss the appeal for lack of jurisdiction or to summarily affirm, arguing that the Order was not immediately appealable under the collateral order doctrine.  Mot. to Dismiss, Doc. No. 1762525.  Nigeria opposed the motion, noting that the issue raised by P&ID's motion was the same as the question presented by Nigeria's appeal.  If this Court finds that the Order abrogates Nigeria's sovereign immunity, then two conclusions necessarily follow:

the Order is immediately appealable under the collateral order doctrine and the Order must be reversed. *See* Opp'n Br. 2, 18, Doc. No. 1763641.

On February 15, 2019, a motions panel denied summary affirmance, and referred the motion to dismiss for lack of appellate jurisdiction to the merits panel assigned to Nigeria's appeal. The motions panel also directed the parties to brief the issues presented in the motion, rather than incorporate those arguments by reference. Doc. No. 1773659. Nigeria now submits its opening brief addressing this Court's jurisdiction together with the substantive question on appeal.[7]

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's determination that a foreign state is not entitled to sovereign immunity under the FSIA. *De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1099 (D.C. Cir. 2017) [hereinafter "*De Csepel II*"]. This Court has an independent obligation to determine its own appellate jurisdiction in the first instance. *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990).

## SUMMARY OF ARGUMENT

1.      The only question presented on this appeal is whether the Order appealed from abrogates Nigeria's sovereign immunity. If it does, this Court has

---

[7] While P&ID repeatedly complains that Nigeria is engaging in dilatory tactics, any "delay" in this action has been entirely due to P&ID's own behavior. All of the actions taken by Nigeria thus far have been consistent with its rights under the FSIA.

jurisdiction under the collateral order doctrine and the District Court must be reversed. That is the proper course in this case. The Order impermissibly infringes on Nigeria's immunity because, by requiring Nigeria to litigate its jurisdictional and merits defenses at the same, the District Court deprived Nigeria of its absolute right to have its sovereign immunity determined as a threshold matter before having to answer to a court that may lack jurisdiction over the claim. In any other proceeding, there would be no question that an order declining to decide a foreign state's Rule 12(b)(1) motion to dismiss under the FSIA until after the foreign state has presented its merits defenses is an abrogation of that immunity. Indeed, the Eleventh Circuit held that an order directing a foreign state to file an answer before the district court had resolved the foreign state's motion to dismiss on sovereign immunity grounds was an immediately appealable denial of sovereign immunity under the collateral order doctrine. *Butler*, 579 F.3d at 1311.

There is no support for the District Court's decision to ignore this rule simply because this is an action to confirm an arbitral award under the FAA. In fact, the only court of appeals to have considered this issue, the Second Circuit, has held that foreign states are entitled to a final threshold immunity determination before proceeding to the merits in any action, including actions to confirm foreign arbitral awards. *Blue Ridge*, 735 F.3d at 80-81. Nothing in the FAA requires a different outcome. And if the FAA were interpreted to require the foreign state to

14

present its merits defenses together with its jurisdictional immunity defenses, it would create tension with the FSIA's immunity provisions as applied by the courts – a tension that must be resolved in favor of sovereign immunity. Neither the District Court nor P&ID has cited any authority to the contrary.

> 2.    P&ID's motion to dismiss this appeal for lack of appellate jurisdiction likewise fails. It is well settled that any refusal to dismiss an action on foreign sovereign immunity grounds is immediately appealable under the collateral order doctrine because that decision is effectively unreviewable on appeal from a final judgment. That is the fundamental reason for extending the collateral order doctrine to appeals involving denials of foreign sovereign immunity. Any other rule would eviscerate the legal and practical value of a foreign sovereign's immunity defense. It does not matter that the District Court did not intend to deny Nigeria's motion to dismiss but only defer a decision on the motion until after the court had also considered all the merits defenses. Nor does it matter that the District Court did not conclusively decide the applicability of an exception to immunity. All that matters is that the Order has the effect of abrogating Nigeria's sovereign immunity. Thus, appellate jurisdiction is proper and the Order must be overturned.

## ARGUMENT

## I. REQUIRING NIGERIA TO DEFEND THIS SUIT ON THE MERITS BEFORE ITS SOVEREIGN IMMUNITY HAS BEEN DEFINITIVELY RESOLVED IS AN ABROGATION OF THAT IMMUNITY

A foreign state has an absolute right to a definitive sovereign immunity determination under the FSIA before being required to defend a lawsuit on the merits. *See Helmerich & Payne*, 137 S. Ct. at 1317, 1324. If none of the FSIA's exceptions to immunity applies, a foreign sovereign's immunity is "complete" and the court lacks subject matter jurisdiction. *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000). Therefore, "[a]t the threshold" of every action, a court must satisfy itself that one of the exceptions to immunity applies – a requirement that was announced by the Supreme Court in its first case applying the FSIA and reaffirmed in its recent decision in *Helmerich & Payne*. 137 S. Ct. at 1324 (quoting *Verlinden*, 461 U.S. at 493); *see Phoenix Consulting*, 216 F.3d at 40 ("Once the defendant has asserted the jurisdictional defense of immunity under the FSIA, the court's focus shifts to the exceptions to immunity * * * *"). Deferring that determination until after the merits of the claim are litigated defeats the "basic objective" of sovereign immunity: to free a foreign sovereign from the indignity and other burdens of having to answer for its conduct in a court that lacks jurisdiction. *Helmerich & Payne*, 137 S. Ct. at 1317, 1320-21; *see also Philippines v. Pimentel*, 553 U.S. 851, 865, 866 (2008) [hereinafter "*Pimentel*"].

16

Indeed, this Court and other courts of appeals have consistently upheld this rule because requiring a foreign state to litigate its merits defenses before the court has made the threshold immunity determination deprives the foreign state of the full benefits of sovereign immunity. *E.g.*, *Phoenix Consulting*, 216 F.3d at 39 ("In order to preserve the full scope of that immunity, the district court must make the 'critical preliminary determination' of its own jurisdiction as early in the litigation as possible; to defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit.'" (quoting *Foremost-McKesson*, 905 F.2d at 449)); *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 197 (D.C. Cir. 2004) (noting that a foreign sovereign's "claim of immunity from suit should be resolved 'as early in the litigation as possible,' lest the purpose to be served by sovereign immunity be unduly compromised" (citation omitted)); *In re Republic of the Philippines*, 309 F.3d 1143, 1149 (9th Cir. 2002) ("We agree with the Republic that the district court should have addressed the merits of the immunity question first in order to preserve the immunity that may be determined to exist."); *Segni v. Commercial Office of Spain*, 816 F.2d 344, 347 (7th Cir. 1987).

That is also why any refusal to dismiss a case on sovereign immunity grounds before proceeding to the merits is immediately appealable under the collateral order doctrine. *Butler*, 579 F.3d at 1311; *United States v. Moats*, 961 F.2d 1198, 1201 (5th Cir. 1992); *see Helmerich & Payne,* 137 S. Ct. at 1323

17

(collecting cases) (recognizing that foreign states "enjoy a right to take an immediate appeal" from denials of immunity under the FSIA); *In re Republic of the Philippines*, 309 F.3d at 1148; *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998) ("A sovereign that is required to litigate a case on the merits before it can appeal the assertion of jurisdiction over it has not been afforded the benefit of the immunity to which it is entitled."); *Foremost-McKesson*, 905 F.2d at 443; *Segni*, 816 F.2d at 347.

In *Butler*, the Eleventh Circuit ruled that an order requiring a foreign state to submit to the jurisdiction of a court by directing it to file an answer on the merits before its assertion of sovereign immunity had been decided was a denial of immunity and as such immediately appealable.  579 F.3d at 1311.  There, the foreign sovereign defendants had filed a Rule 12(b)(1) motion to dismiss the action, arguing that the alleged facts were insufficient to satisfy any of the exceptions to jurisdictional immunity under the FSIA.  *Id*. at 1310.  The district court denied the motion as "premature," deferred a decision on immunity until after discovery on "jurisdictional issues," and – critically – directed the foreign state to file an answer to the complaint.[8]  *Id*. at 1311, 1315.  The defendants took

---

[8] Notably, the district court did not authorize any merits discovery.  *See Butler v. Sukhoi Co.*, No. 07-61078, 2008 U.S. Dist. LEXIS 130770 (S.D. Fla. July 29, 2008).

an immediate appeal from that order, asserting that their immunity from suit had been denied.

The Eleventh Circuit found that the appeal was proper pursuant to the collateral order doctrine because the district court's order had the effect of denying the defendants' sovereign immunity, namely by requiring them to engage in unnecessary jurisdictional discovery *and* answer the complaint before the court would conclusively resolve the motion to dismiss under the FSIA. *Id.* at 1311 (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation")).  The court of appeals held: "[W]e have jurisdiction over appellants' assertion of immunity under the FSIA, notwithstanding the lack of a final judgment in this case." *Id.* at 1311. The Eleventh Circuit then overturned the lower court's order and dismissed the case for lack of jurisdiction under the FSIA, *id.* at 1315, illustrating the importance of deciding a foreign state's immunity defense first before requiring the sovereign to defend its conduct in a court that lacks jurisdiction.[9]

---

[9] In *Frey v. Socialist People's Libyan Arab Jamahiriya*, No. 97-0975-RCL, 2004 U.S. Dist. LEXIS 33027 (D.D.C. Apr. 6, 2004), the district court entered an order directing a foreign state to proceed to the merits, starting with the filing of an answer, before the foreign state's appeal from a denial of its immunity had been resolved.  Within days, this Court granted mandamus directing the lower court to halt "any and all proceedings" during the appeal.  *In re Socialist People's Libyan*

19

Similarly, in *Moats*, the Fifth Circuit found that the "district court's refusal to dismiss on the grounds of FSIA immunity" before the foreign state had filed an answer was immediately appealable under the collateral order doctrine. 961 F.2d at 1201-02. The sovereign defendant, Pemex, moved to dismiss the complaint on two different grounds, including for lack of jurisdiction based on sovereign immunity. After holding a hearing, the district court denied the motion without an opinion. Pemex moved for reconsideration and asked for clarification as to the basis of the court's decision. *Id*. at 1200. The court again denied the motion without an opinion. Pemex took an immediate appeal contending that its sovereign immunity had been denied. *Id*. at 1201. The plaintiff challenged appellate jurisdiction, arguing that the district court had not yet conclusively resolved the immunity question because factual issues relevant to that determination remained outstanding. It further argued that there was no irreparable harm from allowing the case to proceed because all that the plaintiff was seeking was the entry of a money judgment, not execution of the judgment. *Id*. at 1201-02.

The Fifth Circuit disagreed and found that the order was an immediately appealable denial of immunity – even though, in refusing to dismiss the case, "the district court [had] not specif[ied] lack of immunity" – because "the *effect* of the order [was] to require Pemex to defend the lawsuit." *Id*. at 1201 (emphasis added).

_____

*Arab Jamahiriya*, No. 04-7038, 2004 U.S. App. LEXIS 7244, at *1 (D.C. Cir. Apr. 13, 2004) (per curiam).

The court of appeals "treat[ed] the order as holding that Pemex does not have sovereign immunity." *Id*. On that premise, the court noted that the plaintiff's irreparable harm argument was "more easily dispensed with." *Id*. at 1203. The harm in sovereign immunity cases derives not only from being subjected to the relief sought, but also from the risks of having to defend the lawsuit, because the purpose of sovereign immunity is to shield foreign states "from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself." *Id*. The court of appeals ultimately ruled that Pemex was immune from the court's jurisdiction. *Id*. at 1206.

Requiring Nigeria to present all of its merits defenses to a petition to confirm an arbitral award before its motion to dismiss on sovereign immunity grounds has been resolved is no different. Indeed, nothing in the FSIA suggests that actions to enforce an arbitral award should be treated any differently. *Blue Ridge*, 735 F.3d at 80-81 (holding that an order denying a foreign state's assertion of immunity was immediately appealable in an action to confirm an award because foreign sovereigns are entitled to a "threshold determination of FSIA immunity" before proceeding to the merits (relying on *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011))); *see Tatneft v. Ukraine*, No. 17-cv-582 (CKK), 2018 U.S. Dist. LEXIS 152356, at *2 (D.D.C. May 2, 2018) (recognizing a foreign state's right to an interlocutory appeal on the issue of

sovereign immunity under the FSIA before addressing substantive defenses under the New York Convention), *appeal docketed*, No. 18-7057 (D.C. Cir.).  Simply put, there are no exceptions to the rule that a foreign state is entitled to a definitive threshold determination of its sovereign immunity before it can be required to address the merits of a plaintiff's claim.

The District Court cited no authority to the contrary.  Nevertheless, it held that a foreign state's right to a threshold immunity determination is limited to cases in which there will be "potentially arduous discovery and trial on the merits," and reasoned that requiring Nigeria to submit a single brief with all of its jurisdictional and merits defenses simultaneously "does not rise to the level of discovery, trial, or other procedures from which immunity is designed to shield foreign sovereigns." JA-229.  The District Court found it relevant that "separate jurisdictional and merits stages, with attendant appeals," would be more burdensome than filing "a single round of briefing."  JA-230.  That analysis was misguided.

There is no such thing as a *de minimis* infringement on sovereign immunity. Sovereign immunity protects a foreign state from more than monetary or administrative burdens; it is intended to avoid any potential foreign relations friction that could arise from a court's improper exercise of jurisdiction over a foreign state.  As the Supreme Court explained in *Helmerich & Payne*, the FSIA's grant of "immunity from suit in our courts both recognizes the absolute

22

independence of every sovereign authority and helps to induce each nation state, as a matter of international comity, to respect the independence and dignity of every other, including our own." 137 S. Ct. at 1319 (internal quotation marks and brackets omitted); *see Pimentel*, 553 U.S. at 865, 866.

Obligating a foreign sovereign to answer for its conduct and defend itself against a claim before it is determined that the court actually has jurisdiction is an "affront" to that sovereign's independence and dignity, and could result in reciprocal unfair treatment. *Helmerich & Payne*, 137 S. Ct. at 1322 (citing United States Amicus Br. 21-22, available at *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,* No. 15-423, 2016 U.S. S. Ct. Briefs LEXIS 3114, at *36-37 (U.S. Aug. 26, 2016)); *see* United States Amicus Br. 8, 2016 U.S. S. Ct. Briefs LEXIS 3114, at *17-18 ("[R]equiring a legal determination of immunity at the 'threshold' of the action is necessary to ensure that the foreign state actually receives the protections of immunity if no exception applies, to preserve the dignity of the foreign state and comity between nations, and to safeguard the interests of the United States when it is sued in foreign courts." (citation omitted)).

Even if the administrative burdens of litigating the immunity question are significantly greater than the burdens of litigating the remaining merits issues, for instance because of any overlap in the jurisdictional and merits defenses, a foreign

state is still entitled to a threshold immunity determination.  In fact, the Supreme

Court in *Helmerich & Payne* stated that if, in deciding the issue of sovereign

immunity as a threshold matter, the court "must inevitably decide some, or all, of

the merits issues, so be it."  137 S. Ct. at 1319.  But merits issues that are not

"intertwined," *id*. at 1319, with the jurisdictional inquiry are left for the "merits

phase," *id.* at 1316.  *See, e.g., Chevron*, 795 F.3d at 205 n.3, 207 (ruling that a

district court must decide the existence of a valid arbitration agreement "as part of

its jurisdictional analysis" under the FSIA, even though that inquiry is "largely

coextensive" with one of the defenses under the New York Convention); *EM Ltd.*

*v. Banco Central de la República Argentina*, 800 F.3d 78, 88 (2d Cir. 2015)

[hereinafter "*EML*"] (rejecting the argument that an immediate, interlocutory

appeal from a denial of immunity should be deferred until after a final judgment

has been entered where the immunity inquiry overlaps with the merits).  In short,

the affront to the foreign state's sovereignty and independence caused by being

improperly subjected to a court's jurisdiction is the ultimate burden that sovereign

immunity is intended to avoid.[10]

---

[10] Even when a foreign state's jurisdictional immunity defense requires fact
finding, courts narrowly tailor jurisdictional discovery to avoid unnecessarily
infringing on a foreign state's sovereign immunity notwithstanding the fact that a
court always has jurisdiction to decide its own jurisdiction.  *See Butler*, 579 F.3d at
1314, 1315; *Phoenix Consulting*, 216 F.3d at 40 (citing *In re Papandreou*, 139
F.3d 247, 254-55 (D.C. Cir. 1998) (granting extraordinary mandamus relief to
protect a foreign state's jurisdictional immunity)).

Here, requiring Nigeria to submit its defenses on the merits to the petition before the district court has even determined whether it has the jurisdiction to adjudicate those defenses is an affront to Nigeria's dignity and sovereignty. And that affront cannot be assessed based on the level of litigation burden involved in defending the case on the merits as compared to litigating jurisdictional immunity first. Either a foreign state is immune from jurisdiction, and therefore is under no obligation to justify its conduct to the court, or it is not. *See Pimentel*, 553 U.S. at 864 (stating that the "court's consideration of the merits was itself an infringement on foreign sovereign immunity").

In *Blue Ridge*, the Second Circuit held that a foreign state was entitled to a "threshold determination of FSIA immunity," which is immediately appealable, before advancing to the merits in proceedings to confirm an arbitral award, even though award confirmation proceedings do not ordinarily involve a trial. 735 F.3d at 80. In other words, it does not matter whether defending the lawsuit on the merits entails an eight-week trial after months of discovery or only the filing of an answer to a complaint. Once the foreign state is improperly forced to submit to the jurisdiction of the court, the affront to the state's sovereignty is irreversible and its immunity is forever lost.

In reaching the opposite conclusion, the District Court relied on P&ID's argument that a threshold sovereign immunity determination is not necessary

25

because the FAA and this Court's decision in *TermoRio* require award

confirmation proceedings to be brought "under summary motions practice."

JA-226-27.  However, nothing in the FAA requires a foreign state to forego its

right to have its jurisdictional immunity defense decided as a threshold matter

before being required to oppose a petition to confirm an award on the merits.[11]

This Court's decision in *TermoRio* is not to the contrary.  There, the Court held

that a petition to confirm an award was properly dismissed, as opposed to granted,

in a summary proceeding where the foreign state *voluntarily* presented its

jurisdictional and merits defenses at the same time.[12]  487 F.3d at 932, 939.  Thus,

this Court did not have occasion to consider the tension between the FAA's

---

[11] The District Court cited section 6 of the FAA, but that provision says nothing about the rights of a foreign state: "Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."  9 U.S.C. § 6.

[12] The District Court acknowledged that *TermoRio* does not dispose of Nigeria's argument squarely, because "the procedural posture of that case differs from this one and the circuit did not answer the precise question before this Court."  JA-228. All the other cases cited by the District Court also involved situations in which the foreign state *voluntarily* presented its jurisdictional and merits defenses at once before pressing its sovereign immunity defense through appeal.  *See, e.g., Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144, 149 (D.D.C. 2018).  By contrast, in a more recent case, which the District Court ignored, the court withheld its decision on the merits of a petition to confirm an award and stayed all proceedings after the foreign state asserted its right to an immediate appeal from the court's refusal to dismiss the petition on sovereign immunity grounds.  *Tatneft*, 2018 U.S. Dist. LEXIS 152356, at *2.

residual procedures and a foreign state's right to a threshold immunity

determination under the FSIA.

In fact, if the FAA were interpreted to require a foreign state to forgo its

right to a threshold immunity determination, that requirement would have to give

way to a foreign state's right to an immediate threshold determination of its

sovereign immunity.  In *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of

Venezuela*, the Second Circuit concluded that any procedural requirements in a

general statute, which does not distinguish between private and sovereign

defendants (as is the case with the FAA), must yield to the procedures applicable

under the FSIA, which applies specifically to foreign state defendants.  863 F.3d

96, 114-15 (2d Cir. 2017) (relying on *Argentine Republic v. Amerada Hess

Shipping Corp.*, 488 U.S. 428, 436-38 (1989)).

The Second Circuit observed that "the FSIA makes no provision for

summary procedures in any instance," and that "nowhere in the FSIA did Congress

provide an expedited procedure to enter a federal judgment against a foreign

sovereign in *any* circumstance."  *Id*. at 116.  Because the FSIA was intended to be

a comprehensive statutory scheme, the court concluded that the FSIA's

requirements trumped any contrary procedures found outside the FSIA.  *Id*.

(relying on *Verlinden*, 461 U.S. at 490); *accord Micula v. Gov't of Romania*, 714

F. App'x 18, 21 (2d Cir. 2017) (holding that the FSIA "sets forth the exclusive

27

procedures" for enforcing an arbitral award against a foreign state). If a court wishes to weigh the interests of judicial economy and efficiency against the interests protected by sovereign immunity, the scale must tilt on the side of sovereign immunity. Neither the District Court nor P&ID has cited any authority to the contrary.

## II.    THE INFRINGEMENT ON NIGERIA'S IMMUNITY IS SUFFICIENT TO CONFER JURISDICTION ON THIS COURT UNDER THE COLLATERAL ORDER DOCTRINE

As set forth above, any denial of foreign sovereign immunity is immediately appealable under the collateral order doctrine. The fundamental reason for that rule is that deferring a foreign state's appeal from an infringement on its sovereign immunity until after a final decision has been entered would irreversibly and irreparably "destroy the legal and practical value of [its] sovereign immunity defense." *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1282 (3d Cir. 1993) (internal quotation marks omitted); *see also EML*, 800 F.3d at 87, 88 (explaining that one of the reasons a "threshold sovereign-immunity determination is immediately reviewable" is that "an appeal from final judgment cannot repair the damage caused to a sovereign that is improperly required to litigate a case"); *Kilburn*, 376 F.3d at 1126; *Rein*, 162 F.3d at 756 ("[W]hen the jurisdictional issue is one of *immunity*, including sovereign immunity, appeal from final judgment cannot repair the damage that is caused by requiring the defendant to litigate.").

In its motion to dismiss this appeal, P&ID does not dispute that a denial of foreign sovereign immunity is an immediately appealable collateral order, nor could it. Instead, P&ID combines snippets from non-FSIA cases in an attempt to limit a foreign state's right to appeal until the lower court has expressly and conclusively ruled on the applicability of an exception to immunity. P&ID asserted that Nigeria's appeal does not come within the scope of the collateral order doctrine because the District Court did not purport to resolve Nigeria's motion to dismiss, but only deferred it until after Nigeria presented all its merits defenses. Mot. to Dismiss 12-13, Doc. No. 1762525. Under P&ID's theory, a court could postpone its decision on sovereign immunity until after it has considered the merits of the claims, for instance because merits and jurisdictional issues overlap, and the foreign state would have no recourse for vindicating its immunity until after a final judgment is entered. That is not the law.

To be immediately appealable, a district court's decision need not expressly determine whether an exception to sovereign immunity applies; the order need only have the *effect* of abrogating that immunity. *Butler*, 579 F.3d at 1311 (ruling that an order directing the defendants to file an answer before the district court would address their motion to dismiss on sovereign immunity grounds was an immediately appealable denial of immunity, even though the district court had not ruled on the applicability of an exception to immunity); *Moats*, 961 F.2d at 1201

29

(holding that the district court's order denying a multi-grounded motion to dismiss constituted an immediately appealable denial of immunity, even though in denying the motion "the district court did not specify lack of immunity," because "the effect of the order [was] to require Pemex to defend the lawsuit").

Furthermore, in this Circuit, a foreign state's right to take an immediate appeal under the collateral order doctrine has never been contingent on whether the lower court has conclusively determined that an exception to immunity applies. For example, a foreign state is entitled to make a facial challenge to jurisdiction under one of the FSIA's exceptions to immunity, which, if denied, is immediately appealable even though the foreign state retains the right to make a factual challenge to jurisdiction under the same exception to immunity and to take a second interlocutory appeal from that decision if necessary. *See De Csepel v. Republic of Hungary*, 714 F.3d 591, 597 (D.C. Cir. 2013) (reviewing facial or "partial" challenge to jurisdiction under the FSIA pursuant to the collateral order doctrine); *De Csepel II*, 859 F.3d at 1109 (reviewing subsequent factual challenge to jurisdiction under the FSIA on an interlocutory basis); *see also Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 784 F.3d 804, 810-11 (D.C. Cir. 2015) (permitting an interlocutory appeal on the legal sufficiency of the complaint under one aspect of the FSIA's expropriation exception before

30

addressing a factual challenge under a separate requirement of the same exception), *rev'd on other grounds,* 137 S. Ct. 1312 (2017).

In sum, this Court has jurisdiction and the District Court must be overruled because the Order impermissibly infringes on Nigeria's immunity by requiring it to prepare and present its merits defenses before its motion to dismiss on sovereign immunity grounds under the FSIA has been definitively resolved.

## CONCLUSION

For these reasons, the District Court's decision must be reversed.

Dated: April 1, 2019

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By:   */s/ Joseph D. Pizzurro*
Joseph D. Pizzurro
(D.C. Bar No. 468922)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.:  (202) 452-7373
Fax:  (202) 452-7333
Email:  jpizzurro@curtis.com

-and-

Kevin A. Meehan
Juan O. Perla
101 Park Avenue
New York, NY 10178
Tel.:  (212) 696-6000
Fax:  (212) 697-1559

Email:  kmeehan@curtis.com
Email:  jperla@curtis.com

*Attorneys for Appellants Federal*
*Republic of Nigeria and Ministry of*
*Petroleum Resources of the Federal*
*Republic of Nigeria*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 7,633 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

The foregoing document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in 14-point Times New Roman proportionally spaced font using Microsoft Word 2010.

 */s/ Joseph D. Pizzurro*
Joseph D. Pizzurro
(D.C. Bar No. 468922)

**ADDENDUM**

# PERTINENT STATUTES

## Foreign Sovereign Immunities Act

28 U.S.C. § 1330................................................................... ADD1

28 U.S.C. § 1604................................................................... ADD1

28 U.S.C. § 1605(a)(1)........................................................... ADD1

28 U.S.C. § 1605(a)(6)........................................................... ADD1

## Federal Arbitration Act

9 U.S.C. § 6........................................................................... ADD2

9 U.S.C. § 203....................................................................... ADD2

9 U.S.C. § 208....................................................................... ADD2

**Foreign Sovereign Immunities Act**

28 U.S. Code § 1330.  Actions against foreign states

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

(c) For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605–1607 of this title.

28 U.S. Code § 1604.  Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S. Code § 1605.  General exceptions to the jurisdictional immunity of a foreign state

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1)  in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver; * * * *

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a

ADD1

subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

**Federal Arbitration Act**

9 U.S. Code § 6.  Application heard as motion

Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.

9 U.S. Code § 203.  Jurisdiction; amount in controversy

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S. Code § 208.  Chapter 1; residual application

Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States.

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April, 2019, I caused a copy of the foregoing document to be filed with the Clerk of the Court of the United States Court of Appeals for the District of Columbia Circuit via the Court's Electronic Filing System, and to be served electronically upon all counsel of record through that system.

$\quad$ */s/ Joseph D. Pizzurro*
Joseph D. Pizzurro
(D.C. Bar No. 468922)